UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

| | |
|---|---|
| **FELICIA DOWTIN,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **ACTION NO. 2:10CV464** |
| : | |
| **CITY OF NORFOLK,** : | |
| : | |
| **Defendant.** : | |

## MEMORANDUM OPINION AND FINAL ORDER

This matter is before the Court on the City of Norfolk's ("the City" or "defendant") Motion for Summary Judgment filed on June 22, 2011. (ECF No. 27). Plaintiff, Felicia Dowtin, ("Dowtin" or "plaintiff") a former employee of the City, initiated this claim alleging that she was terminated because of her race. Both parties have consented to the jurisdiction of a United States Magistrate Judge (ECF No. 17), and by Order entered March 31, 2011, the case was referred to the undersigned to conduct all further proceedings including the trial and entry of a final judgment. (ECF No. 19). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), Dowtin was advised of her right to respond to the City's Motion for Summary Judgment with any material that she wished to offer in rebuttal. Plaintiff filed two sworn statements in response to the City's motion on July 11, 2011. (ECF Nos. 32, 33). Neither party requested oral argument, and the Court does not find that oral argument is necessary to resolve the issues in this case. Accordingly, the City's motion for summary judgment is now ripe for judicial review.

1

## I.     FINDINGS OF UNDISPUTED MATERIAL FACT

Plaintiff, an African American, began working for the City at Selden Arcade in the reception area as a temporary employee hired through a temporary employment agency. (Pl.'s Dep. Tr., ECF No. 28-1 at 12). In November 2007 she was hired as a permanent Support Technician in administrative offices of the City's Department of Cultural Facilities, Arts, & Entertainment ("CFA&E"). (Id.) Dowtin does not have a high school diploma, but earned a graduate equivalency degree (GED) in 1988 at age 21. (Id. at 2). She also studied computer science at Electronics Institute of Technology for approximately one year. (Id. at 3-4). Prior to working at CFA&E, plaintiff had worked as a sales clerk, waitress and receptionist, but had no experience working with contracts or legal documents. (Id. at 4-7; 16).

As a Support Technician at CFA&E, plaintiff's supervisor was Alice Cimino, ("Cimino") with whom she had no substantial prior working relationship. (Id. at 14). She also reported to Event Manager, Scott Warren, and ultimately Acting Director of CFA&E, Steve Harper. (Id. at 15; see also Pl.'s Resp. to Roseboro Notice, ECF No. 32). Most of plaintiff's work involved preparing form contracts, correspondence related to the contracts, and maintaining contract files. (Pl.'s Dep. Tr., ECF No. 28-1 at 16). She was also responsible for maintaining and distributing an Events Calendar. (Pl.'s Dep. Tr., ECF No. 28-1 at 49). Plaintiff received multiple one-on-one training sessions with a former incumbent of the position, Megan Mensink ("Mensink"). Dowtin also met with Cimino approximately once a week to review her work. (Mensink Aff., ECF No. 28-2 at 2-3 and Pl.'s Dep. Tr., ECF No. 28-1 at 24).

Despite the training and supervision the City provided throughout Dowtin's employment, she made numerous spelling and grammatical errors on contracts and correspondence. (Mensink Aff., ECF No. 28-2 at 3; Pl.'s Dep. Tr., ECF No. 28-1 at 40-45). She also failed to effectively

2

maintain the event calendar as outlined in her duties, and failed to keep a written record of mailed contracts and other correspondence. (Pl.'s Dep. Tr. Ex 9, ECF No. 28-1 at 59-60). Plaintiff often could not locate a file, and wouldn't know the status of a contract. (Mensink Aff., ECF No. 28-2 at 4). Plaintiff was also admonished by Cimino for excessive socializing with co-workers. (Pl.'s Dep. Tr., ECF No. 28-1 at 18-19). Plaintiff stated that Jennifer Kellerman, ("Kellerman") a white employee, also socialized with co-workers (including the plaintiff), but was not similarly reprimanded. (Id.) Kellerman was not supervised by Cimino. (Id.)

Plaintiff's superiors discussed these deficiencies with her on numerous occasions, and eventually on February 14, 2008, plaintiff was presented with a Performance Improvement Plan, which she and Cimino discussed together and signed. (Mensink Aff., ECF No. 28-2 and Pl.'s Dep. Tr. Ex. 8, ECF No. 28-1 at 52-55). Cimino stated that plaintiff "was very positive and came with solutions to assist her with her performance." (Pl.'s Dep. Tr. Ex. 9, ECF No. 28-1, at 61). Despite repeated counseling, however, the errors persisted including one in which plaintiff had not secured a signed contract for a performer scheduled to appear the following weekend. (Mensink Aff., ECF No. 28-2 at 5). Plaintiff was terminated from CFA&E on April 4, 2008. (Pl.'s Dep. Tr. Ex. 9, ECF No. 28-1 at 64).

Dowtin has presented, and the summary judgment record contains, no direct evidence of discrimination with respect to Cimino or any other City employee. Her sworn responses to the motion contain no direct evidence of discrimination. (ECF No. 32, 33). Although she has stated that "testimony will show Ms. Cimino did create a hostile work environment for employees of color," and that she "used her position against African American employees," Dowtin has provided no examples and identified no witnesses who would support these conclusory claims. Dowtin has not identified any instance where Cimino made racially insensitive remarks or

otherwise acted with an overtly discriminatory motive. (See, Pl.'s Dep. Tr., ECF No. 28-1 at 38-44; ECF Nos. 32 and 33). By plaintiff's own admission, her claim of discrimination is based more on intuition and a "gut feeling," relating to Cimino's decision to hire another employee, Sandy Rockwell. (Pl.'s Dep. Tr., ECF No. 28-1 at 23).

Dowtin believed that her termination resulted from Cimino's desire to hire Rockwell who is Caucasian. (Id. See also ECF No. 32 at 1-2). Rockwell formerly worked with Cimino. She was hired by the City as a receptionist prior to Dowtin's termination. Dowtin states that Cimino wanted to give Rockwell the duties of Support Technician. (Pl.'s Resp., ECF No. 32 at 1-2). Although not entirely clear from her pleadings, it appears Dowtin attributes the scrutiny of her work to Cimino's desire to employ Rockwell. After Dowtin's termination the duties of the position were performed by a variety of temporary workers until a permanent replacement was hired. (Mensink Aff., ECF No. 28-2 at 5). Rockwell was never hired into the position of Support Technician. (ECF No. 32 at 3). The permanent employee actually hired by the City to fill the Support Technician position in February of 2010 was Shamekqua Mulligan, who is African-American. (Mensink Aff., ECF No. 28-2 at 5).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Spriggs v.

Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In order to survive summary judgment on a racial discrimination claim,

> [the] non-moving party, who will bear the burden of proof at trial on a dispositive issue, may not rest upon mere belief or conjecture, or the allegations and denials contained in his pleadings. Rather, the non-moving party must set forth specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial.

Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D.Va., 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

Absent direct evidence of discrimination, Plaintiff, as the party with the burden of proof at trial, must first establish a prima facie case of employment discrimination under 42 U.S.C.A. §2000e-3. To do this, she must show:

> (1) that [s]he is a member of a protected class; (2) that [s]he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action [s]he was performing at a level that met h[er] employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.

King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) citing Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999). If she satisfies this burden, it would then shift to the City to show that plaintiff was terminated for a legitimate, nondiscriminatory reason. Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253 (4th Cir. 2001). Should the City show that Dowtin was terminated for legitimate nondiscriminatory reasons, the burden shifts back to plaintiff to provide evidence that the City's proffered rationale is mere pretext for a decision that was, at its core, racially motivated. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000) (citing St. Mary's Honor Cr. v. Hicks, 509, U.S. 502, 507-08 (1993)).

### III. ANALYSIS

In this case, even construing all of the facts in a light most favorable to plaintiff, she has nevertheless failed to present a genuine dispute of material fact sufficient to support her claim for racial discrimination. Plaintiff has established, and the City does not deny, that she is a member of a protected class (African-American) and that she suffered from an adverse employment action (termination). (Compl., ECF No. 3). However, her evidence on elements three and four of the prima facie case fails to demonstrate a material issue for trial. Dowtin has produced no evidence that that she was performing at a level that met her employer's legitimate expectations, nor has she shown that the position was filled by a similarly qualified applicant outside the

protected class. The exhibits supporting the City's motion amply support the opposite conclusion on both points.

While plaintiff claims that her work was unfairly scrutinized and that errors attributed to her resulted from templates or forms which she said had been used by others in her position, she ultimately does not dispute the fact that her work contained numerous errors. (See, Pl.'s Dep. Tr., ECF No. 28-1 at 41-42; 52-54; Pl.'s Opp., ECF No. 33 at 1-2). Plaintiff has not provided even a minimal showing through examples, deposition transcripts, or affidavits that would present the Court with a genuine dispute over whether her work contained errors, whether she followed through on contracts, and properly maintained the event calendar as required by the legitimate conditions of her employment.

In truth it is difficult discern Dowtin's factual claims. Her sworn rebuttal to the summary judgment motion, which is itself replete with spelling, grammatical and other errors, appears to reiterate her view that her work was singled out for scrutiny allegedly as a result of Cimino's interest in hiring Rockwell. (Pl.'s Opp., ECF No. 32 at 2-3). As Rockwell was already employed by the City prior to Dowtin's termination, and did not replace her on a permanent basis, it is difficult to discern the relevance of Dowtin's point. Moreover, in making the point she fails to rebut the City's core claim – that she (Dowtin) was not meeting the expectations of the position. The following excerpt from Dowtin's rebuttal is typical: "I will prove to the courts that Ms. Ciminio (sic) did scrutinize my work, she had to find a reason to terminate me so mistakes were found due to her being Supervisor and 'she was able to state work being incorrect or errors have been made' even thought (sic) I used templates, letters and contracts of the same forms from past previous work." (Pl.'s Opp., ECF No. 33 at 2).

7

Plaintiff also does not dispute the admonishment by Cimino for excessive socializing with co-workers. (Pl.'s Dep. Tr., ECF No. 28-1 at 41-42). She alleges that a Caucasian employee, Kellerman, behaved similarly but was not reprimanded. (Id. at 19-20). However, plaintiff fails to make any showing that she and Kellerman had similar roles within the workplace, or that Kellerman was similarly qualified. She has acknowledged that Kellerman reported to a different supervisor. (Id.). Moreover, in light of the extensive documentation of Dowtin's poor substantive performance, her excessive socializing appears to have played a minimal – if any – role in her termination. As a result, Dowtin has not shown that she and Kellerman were similarly situated, so as to raise any inference of discrimination from this allegation even if it is viewed in a light most favorable to her.

In support of its motion, the City has referenced numerous emails, a Performance Improvement Plan, and an affidavit from plaintiff's trainer in which her superiors identified deficiencies in plaintiff's work and discussed those deficiencies in detail with her. (ECF Nos. 28-1 at 52-65). The City also cites Dowtin's own testimony concerning errors in her work and the City's efforts to correct those errors. (Pl.'s Dep., ECF No. 28-1 at 29-30, 52-55). In response to these facts, Plaintiff's conjecture regarding the reasons why her work was scrutinized does not present a genuine dispute of fact on element three - that her work met the level of her employer's legitimate expectations. It clearly did not.

With regard to the fourth factor, Plaintiff's filings contain no facts to dispute the City's declaration that the person who ultimately filled her position was also a member of the same protected class. Plaintiff alleged in her claim, and again in her deposition, that her employer was "grooming" Sandy Rockwell, a Caucasian employee, to replace her, however, she has provided the court with no evidence that a Caucasian person filled her position. In fact, she admitted that

Rockwell did not replace her, a fact she attributes to Rockwell declining the position. (Pl.'s Opp., ECF No. 32 at 3). The City provided evidence in the form of Mensink's affidavit that plaintiff's position was ultimately filled by an African-American. (ECF No. 28-2 at 5). Dowtin's speculation regarding her supervisor's alleged "grooming" of Rockwell is insufficient to create a dispute of material fact on this element. Moreover, the fact that Rockwell was already employed by the City at the time Dowtin was terminated, seriously undermines the inference of discrimination she seeks. She has admitted that Rockwell did not succeed her. She has produced no evidence that Rockwell received any other benefit or change in status as a result of Dowtin's firing.

Throughout plaintiff's claim and response to the City's motion for summary judgment, she asserts in conclusory terms that the "testimony will show" that Cimino "used her position against African-Americans" or that "African Americans were punished due to statements or complaints she made on them." This does not suffice to survive summary judgment. The plaintiff, as the party with the burden of proof at trial, must make some showing of a genuine dispute of a material fact. Dowtin's "gut feeling" that she was discriminated against is insufficient to survive summary judgment. See Golberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988) (conclusory assertions regarding state of mind or motivation are not sufficient to withstand summary judgment). Even when examining the claim in a light most favorable to her, Dowtin makes only conclusory, unsubstantiated claims which are too vague to create a material issue on the elements of her cause of action. Both Cimino and Mensink were initially complimentary of plaintiff, supported her work, and provided ample training and guidance on correcting her shortcomings. When plaintiff's work performance continued to fall short, she was

9

terminated for that reason and replaced with another African-American employee. Dowtin's filings present no material dispute as to any of these facts.

Furthermore, even if Dowtin had established a prima facie case of employment discrimination, the City has more than met its burden to show that her termination was motivated by legitimate nondiscriminatory reasons. The City provided an affidavit from Dowtin's colleague and trainer, a detailed Performance Improvement Plan, multiple pages of correspondence between Dowtin's supervisors, as well as Dowtin's own testimony, that her work contained numerous errors and deficiencies, and failed to meet the legitimate requirements of the position. Dowtin provides no evidence that these reasons are simply a pretext for a racially motivated firing.

## IV. CONCLUSION

There is no genuine issue for trial. The plaintiff has not presented a prima facie case of racial discrimination and the City has provided ample evidence of legitimate nondiscriminatory reasons for her termination. Accordingly, the Court GRANTS the City's motion for summary judgment, and will dismiss the case with prejudice and enter judgment in favor of the City.

Plaintiff is ADVISED that she may appeal from this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within thirty (30) days from the date of this Order.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 28, 2011